David E. Bower (SBN 119546)
**MONTEVERDE & ASSOCIATES PC**
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (213) 446-6652
Fax: (212) 202-7880

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIKET SCHNEIDER, Individually and on Behalf of All Others Similarly Situated, | Civil Action No.    2:17-cv-6469 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| GUIDANCE SOFTWARE, INC., ROBERT VAN SCHOONENBERG, PATRICK DENNIS, REYNOLDS C. BISH, MAX CARNECCHIA, JOHN COLBERT, MICHAEL MCCONNELL, and WADE W. LOO, | **1.  VIOLATIONS OF THE SECURITIES EXCHANGE ACT  OF 1934** |
| Defendants. | |

Aniket Schneider ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.     This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Guidance Software, Inc. ("Guidance" or the "Company") against Guidance and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with Guidance, the "Defendants") for their violations of Sections 14(e), 14(d)(4), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(e), 78n(d)(4), 78t(a), and SEC Rule 14d-9, 17 C.F.R. 240.14d-9, in connection with the tender offer ("Tender Offer") by Open Text Corporation ("Open Text") to purchase all of the issued and outstanding shares of Guidance common stock (the "Proposed Transaction") for $7.10 per share (the "Offer Price").

2.     On August 8, 2017, in order to convince Guidance stockholders to tender their shares, the Board authorized the filing of a materially incomplete and misleading Schedule 14D-9 Solicitation/Recommendation Statement (the "Recommendation Statement") with the Securities and Exchange Commission ("SEC"). In particular, the Recommendation Statement contains materially incomplete and misleading information concerning Guidance's financial projections

and the valuation analyses performed by the Company's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley").

3.      The Tender Offer is scheduled to expire on September 6, 2017 (the "Expiration Date"). It is imperative that the material information that has been omitted from the Recommendation Statement is disclosed to the Company's stockholders prior to the forthcoming Expiration Date so they can properly determine whether to tender their shares.

4.      For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from closing the Tender Offer or taking any steps to consummate the Proposed Transaction, unless and until the material information discussed below is disclosed to Guidance stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(e), 14(d)(4) and 20(a) of the Exchange Act.

6.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has

sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Guidance maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## **PARTIES**

8.      Plaintiff is, and at all relevant times has been, a stockholder of Guidance.

9.      Defendant Guidance is a Delaware corporation and maintains its headquarters at 1055 E. Colorado Boulevard, Pasadena, California 91106. Guidance's common stock trades on the NASDAQ under the ticker symbol "GUID".

10.      Individual Defendant Robert van Schoonenberg is a director of Guidance and is the Chairman of the Board.

11.      Individual Defendant Patrick Dennis is a director of Guidance and is the Chief Executive Officer of the Company.

CLASS ACTION COMPLAINT

12.     Individual Defendant Reynolds C. Bish is, and has been at all relevant times, a director of the Company.

13.     Individual Defendant Max Carnecchia is, and has been at all relevant times, a director of the Company.

14.     Individual Defendant John C olbert is, and has been at all relevant times, a director of the Company.

15.     Individual Defendant Michael McConnell is, and has been at all relevant times, a director of the Company.

16.     Individual Defendant Wade W. Loo is, and has been at all relevant times, a director of the Company.

## CLASS ACTION ALLEGATIONS

17.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public stockholders of Guidance (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

18.     This action is properly maintainable as a class action because:

a.      The Class is so numerous that joinder of all members is impracticable.  As of August 3, 2017, there were 33,431,155 shares of Guidance common stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country.  The actual number of public stockholders of Guidance will be ascertained through discovery;

CLASS ACTION COMPLAINT

b.    There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i)    whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Recommendation Statement, in violation of Sections 14(e) and 14(d)(4) of the Exchange Act;

ii)    whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iii)    whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to tender their shares based on the materially incomplete and misleading Recommendation Statement.

c.    Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.    Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect

to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.    A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

**I.    Open Text's Offer Price is Inadequate.**

19.    Guidance, incorporated on November 17, 2006, is a technology company. The Company is a provider of endpoint investigation solutions for cybersecurity analytics, security incident response, e-discovery, data privacy, and forensic analysis. The Company's products and services provide the investigative and forensic services to enable its customers to search, collect, and analyze electronically stored information in order to address and remediate suspicious network activity and respond to security breaches, litigation, human resources matters, regulatory requests, allegations of fraud, and to defend their organizations' digital assets.

20.    The Offer Price is severely inadequate given Guidance's recent financial performance and strong growth prospects.  In the year leading up to the announcement of the Proposed Transaction Guidance's stock price increased nearly

20%, going from $5.79 on July 5, 2016 to $6.90 on June 30, 2017, illustrated by the chart below:



21.    Indeed, the $7.10 Offer Price represents an 9% *discount* to Guidance's 52-week high trading price of $7.80, and a derisory 2.9% premium to their July 25, 2017 closing price of $6.90. Further, Morgan Stanley valued the Company at a significantly higher price than the Offer Price. Morgan Stanley calculated an implied present value per share of up to $12.04, a nearly 75% premium to the Offer Price.

22.    Moreover, since the Offer Price was announced, multiple financial experts have downgraded the Company, and lowered their price targets. B. Riley lowered their price target from $9 to the value of the Offer Price and Piper Jaffray lowered their price target from $8.50 to the value of the Offer Price. It is important to note that price targets are a predictive valuation of what a stock is worth on its

own.[1] They do not account for premiums associated with a merger or takeover. A "take-out price", or the price that analysts predict in the event a merger or takeover, would include those premiums and be significantly higher.

23.     In sum, the Offer Price appears to inadequately compensate Guidance stockholders for their shares.  Given the Company's strong financial results and growth potential, it appears that $7.10 per share is not fair compensation for Guidance stockholders. It is therefore imperative that Guidance stockholders receive the material information that has been omitted from the Recommendation Statement, so that they can make a fully informed decision concerning whether to tender their shares.

## II.  The Merger Agreement's Deal Protection Provisions Deter Superior Offers.

24.     In addition to conducting an unreasonable sales process that resulted in an unfair Offer Price, the Individual Defendants agreed to certain deal protection provisions in the Merger Agreement that operate conjunctively to deter other suitors from submitting a superior offer for Guidance.

25.     First, the Merger Agreement contains a no solicitation provision that prohibits the Company or the Individual Defendants from taking any affirmative action to obtain a better deal for Guidance stockholders. The Merger Agreement states that the Company and the Individual Defendants shall not:

[1] See http://www.investopedia.com/terms/p/pricetarget.asp

9

(i) solicit, initiate or knowingly facilitate or encourage the submission of any Competing Proposal or any inquiry, proposal or request for information regarding or that would reasonably be expected to lead to, or result in, a Competing Proposal, (ii) other than informing Third Parties of the existence of the provisions contained in this Section 5.3, enter into or participate in any discussions or negotiations with, furnish any information relating to the Company or any of its Subsidiaries or afford access to the offices, properties, books and records of the Company or any of its Subsidiaries to, any Person with respect to inquiries, proposals or requests for information regarding, or that would reasonably be expected to lead to, or the making of, a Competing Proposal, (iii) (A) fail to make, or withdraw, modify, qualify or amend in a manner adverse to Parent, the Company Board Recommendation (or recommend a Competing Proposal), (B) take any action to exempt any Third Party from the provisions of Section 203 of the DGCL or any other applicable state takeover statute, (C) fail to publicly reaffirm the Company Board Recommendation within three (3) Business Days after Parent so requests in writing, (D) fail to recommend, in a Solicitation/Recommendation Statement on Schedule 14D-9, against any Competing Proposal subject to Regulation 14D under the Exchange Act within ten (10) Business Days after the commencement of such Competing Proposal or (E) approve, adopt or recommend any Competing Proposal, or propose publicly to approve, adopt or recommend, any Competing Proposal (any of the foregoing in this clause (iii), an "Adverse Recommendation Change"), or (iv) enter into any agreement in principle, letter of intent, term sheet, merger agreement, acquisition agreement, option agreement or other similar instrument (other than an Acceptable Confidentiality Agreement) relating to an Competing Proposal or a potential Competing Transaction or requiring, or reasonably expected to cause, the Company to abandon, terminate, materially delay or fail to consummate, or that would otherwise materially impede or interfere with, the Merger or any of the other Transactions (an "Alternative Acquisition Agreement").

CLASS ACTION COMPLAINT

26.     Additionally, the Merger Agreement grants Open Text recurring and unlimited matching rights, which provides Open Text with: (i) unfettered access to confidential, non-public information about competing proposals from third parties which it can use to prepare a matching bid; and (ii) four business days to negotiate with Guidance, amend the terms of the Merger Agreement, and make a counter-offer in the event a superior offer is received.

27.     The non-solicitation and matching rights provisions essentially ensure that a superior bidder will not emerge, as any potential suitor will undoubtedly be deterred from expending the time, cost, and effort of making a superior proposal while knowing that Open Text can easily foreclose a competing bid.  As a result, these provisions unreasonably favor Open Text, to the detriment of Guidance's public stockholders.

28.     Moreover, the Merger Agreement provides that Guidance must pay Open Text a termination fee of $6,014,095.55 in the event the Company elects to terminate the Merger Agreement to pursue a superior proposal.  The termination fee provision further ensures that no competing offer will emerge, as any competing bidder would have to pay a naked premium for the right to provide Guidance stockholders with a superior offer.

29.     Compounding matters, the Company's officers and directors entered into a *Tender and Voting Agreement*, concurrently with the execution and delivery

of the Merger Agreement, pursuant to which each such person agreed, among other things, to:

> (a) accept the Offer and tender their Company Shares pursuant to the Offer; and (b) to vote against (i) any Competing Proposal or any proposal related to a Competing Proposal, (ii) any merger (other than the Merger), consolidation or other combination involving the Company or the subsidiaries of the Company or a reorganization, recapitalization, extraordinary dividend, dissolution or liquidation of the Company or any of the subsidiaries of the Company, (iii) to the extent submitted to a stockholder vote, any change in the business, management or Company Board (other than as directed by Parent or Purchaser) or (iv) any other action, proposal or agreement that would (x) reasonably be expected, to impede, interfere with, materially delay or postpone the Merger and the Transactions, (y) result in any of the conditions to the Offer or conditions to the Merger not being fulfilled or satisfied or (z) change in any manner the dividend policy or capitalization of, including the voting rights of any class of equity interests in, the Company.

This Tender and Voting Agreement virtually assures that no superior offer will emerge. The provisions assigning the combined voting power of the officers and directors in favor of the merger and their agreement to vote against any competing proposal make it a near certainty that Tender Offer will consummate, and, therefore, are materially unfair to Guidance stockholders generally.

30.     Ultimately, these preclusive deal protection provisions restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company.

CLASS ACTION COMPLAINT

31.     Given that the preclusive deal protection provisions in the Merger Agreement impede a superior bidder from emerging, it is imperative that Guidance's stockholders receive all material information necessary to make a fully informed decision regarding whether to tender their shares.

## III.    The Recommendation Statement Is Materially Incomplete and Misleading.

32.     On August 8, 2017, Defendants filed the Recommendation Statement with the SEC.   The Recommendation Statement has been disseminated to the Company's stockholders, and solicits the Company's stockholders to tender their shares in the Tender Offer.   The Individual Defendants were obligated to carefully review the Recommendation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Recommendation Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act.

33.     First, the Recommendation Statement fails to disclose the unlevered free cash flow projections[2] for all sets of financial projections prepared by

---

[2] Unlevered free cash flows are used to determine a company's enterprise value. The unlevered free cash flow allows investors to ascertain the operating value of a company independent of its capital structure. This provides a greater degree of analytical flexibility and allows for a clearer picture of the value of the company overall. For this reason, unlevered free cash flows are routinely used to value a company, especially in merger contexts.

CLASS ACTION COMPLAINT

management. Guidance discloses the unlevered free cash flow projections for the *July 2017 Management Projections*, but fails to do so for the other two sets of projections prepared by management. Additionally, in the *July 2017 Management Projections*, the Recommendation Statement only discloses the unlevered free cash flows for 2017-2021, yet Morgan Stanley explicitly uses management's cashflow projections ranging from 2017-2024 in its Discounted Cash Flow Analysis. *See Recommendation Statement* 37.

34.     Unlevered free cash flows are material to the Company's stockholders. Indeed, investors are concerned, perhaps above all else, with the unlevered free cash flows of the companies in which they invest.  Under sound corporate finance theory, the value of stock should be premised on the expected unlevered free cash flows of the corporation. Accordingly, the question that the Company's stockholders need to assess in determining whether to tender their shares is clear – is the Offer Price fair compensation given the Guidance's expected unlevered free cash flows?  Without unlevered free cash flow projections, the Company's stockholders will not be able to answer this question and assess the fairness of the Offer Price.

35.     Adjusted EBITDA is not a sufficient alternative to unlevered free cash flows – as Warren Buffet and other financial experts have stated: "References to EBITDA make us shudder.  Too many investors focus on earnings before interest, taxes, depreciation, and amortization.  That makes sense, only if you think capital

expenditures are funded by the tooth fairy."[3]  Relying solely on EBITDA to provide a fair summary of a company's financial prospects has numerous pitfalls. EBITDA does not take into account any capital expenditures, working capital requirements, current debt payments, taxes, or other fixed costs that are critical to understand a company's value.[4]  As a result of these material differences between EBITDA and unlevered free cash flows, many experts recognize unlevered free cash flows as a much more accurate measure when it comes to analyzing the expected performance of a company.  Simply put, the unlevered free cash flow projections are material and their omission renders the projections included in the Recommendation Statement misleading.

36.     The omission of the above-referenced projections renders the financial projections included on pages 45-46 of the Recommendation Statement materially incomplete and misleading.  If a recommendation statement discloses financial projections and valuation information, such projections must be complete and accurate.  The question here is not the duty to speak, but liability for not having spoken enough.  With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths.

---

[3]     Elizabeth MacDonald, *the Ebitda folly*, FORBES (March 17, 2003), http://www.forbes.com/global/2003/0317/024.html.

[4]     Cody Boyte, *Why EBITDA is Not Cash Flow*, AXIAL FORUM (Nov. 19, 2013), http://www.axial.net/forum/ebitda-cash-flow/.

CLASS ACTION COMPLAINT

37.     With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose the following key components used in the analysis: (i) the unlevered free cash flows for years 2022-2024 not included in the Management Projections; (ii) the inputs and assumptions underlying the calculation of the discount rate range of 8.9% to 10.9%; (iii) the inputs and assumption underlying the selection of the perpetual growth rate range of 1.5% to 2.5%; and (iv) the actual range of terminal values utilized in the analysis.

38.     These key inputs are material to Guidance stockholders, and their omission renders the summary of Morgan Stanley's Discounted Cash Flow Analysis incomplete and misleading.  As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…" *Id*.  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and
> any change can markedly affect the discounted cash flow
> value. For example, a change in the discount rate by one
> percent on a stream of cash flows in the billions of dollars
> can change the discounted cash flow value by tens if not
> hundreds of millions of dollars….This issue arises not
> only with a discounted cash flow analysis, but with each
> of the other valuation techniques.  This dazzling variability

makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion <u>unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices.</u> The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78.

39.     With respect to Morgan Stanley's *Discounted Equity Value Analysis*, the Recommendation Statement also fails to disclose the following key components used in the analysis: (i) the estimate of net cash as of the end of the second quarter of calendar year 2019 used in the analysis; (ii) the inputs and assumptions underlying the calculation of the discount rate of 9.9%; (ii) the inputs and assumption underlying the selected multiple range of 1.25x - 2.25x for revenue; and (iv) the inputs and assumption underlying the selected multiple range of 10.0x – 18.0x for EBITDA. As with the Discounted Cash Flow Analysis, these valuation analyses were performed by the Company's financial advisor, are heavily relied on by stockholders, and are expected to represent a clear and accurate state of the Company's finances. Thus, in summarizing these analyses in the Recommendation Statement, the Company must be completely transparent with the information provided. The failure to include this valuable information renders the summary of these analyses set forth in the Recommendation Statement materially incomplete and misleading.

40.     With respect to Morgan Stanley's *Public Trading* and *Precedent Transactions* Analyses, the Recommendation Statement fails to disclose the individual multiples Morgan Stanley calculated for each of the companies and transactions used.  A fair summary of these analyses requires the disclosure of the individual multiples for each company and transaction utilized.  Merely providing the range that a banker applied to render the Implied Value Per Share is insufficient, as stockholders are unable to assess whether the banker applied appropriate multiples, or, instead, applied unreasonably low multiples in order to drive down the implied valuation of the Company.  The omission of the individual multiples renders the summary of this analysis set forth on pages 34-36 and 37-39 of the Recommendation Statement materially incomplete and misleading.

41.     With respect to Morgan Stanley's *Precedent Premia* analysis, the Recommendation Statement fails to disclose either a full range of values or the individual premiums used to prepare the comparative analysis. A fair summary of this analysis requires the disclosure of the individual premiums for each transaction observed, or at least a full range of values. Providing only the mean/median and quartile premiums is insufficient. The omission of this information renders the summary of this analysis set forth on page 39 of the Recommendation Statement materially incomplete and misleading.

42.     With respect to the Morgan Stanley's *Equity Research Analysts' Price Targets*, the Recommendation Statement fails to disclose the individual price targets

reviewed and utilized in the analysis. The omission of these individual targets renders the corresponding summary materially misleading. Further, the Morgan Stanley applied a steep discount rate to unfairly lower the already deflated values. *See supra* ¶22. A fair summary of price targets requires the disclosure of the individual targets observed from each equity research analyst; merely providing the range or inappropriate calculations based on a range is insufficient, as stockholders are unable to assess whether the banker summarized fairly, or, instead, provided only the figures that best present the price targets in light of to the Offer Price, i.e. as low as possible.

43.    Finally, the Recommendation Statement fails to provide material information regarding potential conflicts of interest of the Company's officers. As stated in the Offer to Purchase for Cash, Ex-99.(a)(1)(A) to the Schedule TO (not the Recommendation Statement), Guidance's officers will continue as the officers of the Surviving Corporation. In addition to failing to disclose this fact in its entirety, The Recommendation Statement omits the timing and nature of any communications or negotiations regarding the future employment of Guidance's officers.

44.    The Recommendation Statement carefully explains that "The Company Board requested management to confirm that they would not discuss **compensation** arrangements with any potentially interested party until later in the sale process after such discussions had been consented to by the Company Board. Management confirmed that they would comply with this request." However, the

CLASS ACTION COMPLAINT

Recommendation Statement fails to provide any clarification or further information regarding whether the Board's request applied to discussions about continued employment generally, or merely to amounts of compensation, or when management actually engaged in such discussions.

45.    The omitted information is particularly important to Guidance stockholders given Individual Defendant Dennis' level of involvement in the negotiations of the Proposed Transaction. Indeed, it was Dennis who brought Open Text into the sales process, not Morgan Stanley.

46.    The omitted information relating to the timing, content, and parties involved in these communications concerning the post-transaction retention of Guidance's management and/or directors would significantly alter the total mix of information that Defendants have disclosed to solicit stockholder support of the Proposed Transaction. Potential conflicts of interest are particularly concerning for shareholders given the potential impact they could have on negotiations and, ultimately, the compensation stockholders stand to receive.

47.    In sum, the omission of the above-referenced information renders statements in the Recommendation Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding

whether to tender their shares, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

### (Against All Defendants for Violation of Section 14(e) of the Exchange Act)

48.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49.    Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading…" 15 U.S.C. §78n(e).

50.    Defendants have issued the Recommendation Statement with the intention of soliciting Guidance stockholders to tender their shares. Each of the Defendants reviewed and authorized the dissemination of the Recommendation Statement, which fails to provide material information regarding Guidance's financial projections and the valuation analyses performed by Morgan Stanley.

51.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(e). The Individual Defendants were therefore reckless, as they had reasonable grounds to believe material facts existed that were misstated or omitted

from the Recommendation Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

52.     The Individual Defendants were privy to and had knowledge of the projections for the Company and the details concerning Morgan Stanley's valuation analyses. The Individual Defendants were reckless in choosing to omit material information from the Recommendation Statement, despite the fact that such information could have been disclosed without unreasonable efforts.

53.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Class, who will be deprived of their right to make an informed decision regarding whether to tender their shares if such misrepresentations and omissions are not corrected prior to the Expiration Date. Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against all Defendants for Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9,17 C.F.R. § 240.14d-9)**

54.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

55.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers. Specifically, Section 14(d)(4) provides that:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

56.     SEC Rule 14d-9(d), which was adopted to implement Section 14(d)(4) of the Exchange Act, provides that:

> Information required in solicitation or recommendation. Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof.

57.     In accordance with Rule 14d-9, Item 8 of a Schedule 14D-9 requires a Company's directors to:

> Furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

58.     The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omissions render the Recommendation Statement false and/or misleading.

CLASS ACTION COMPLAINT

59.    Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, Defendants undoubtedly reviewed the omitted material information in connection with approving the Proposed Transaction.

60.    The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Class, who will be deprived of their right to make an informed decision regarding whether to tender their shares if such misrepresentations and omissions are not corrected prior to the Expiration Date. Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

61.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

62.    The Individual Defendants acted as controlling persons of Guidance within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Guidance, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Recommendation Statement,

they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

63.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement by Plaintiff to be misleading prior to the date the Recommendation Statement was issued, and had the ability to prevent the issuance of the false and misleading statements or cause the statements to be corrected.

64.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.    The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants that stockholders tender their shares in the Tender Offer.    They were thus directly involved in preparing this document.

65.    In addition, as the Recommendation Statement sets forth, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the merger agreement.    The Recommendation Statement purports to describe the various issues and information that the Individual Defendants reviewed

CLASS ACTION COMPLAINT

and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

66.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

67.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e), 14(d)(4) and Rule 14d-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

68.    Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A. Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from

CLASS ACTION COMPLAINT

proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Recommendation Statement;

C. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D. Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

E. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F. Granting such other and further equitable relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury.

DATED: August 31, 2017

Respectfully submitted,

*/s/ David E. Bower*
David E. Bower

David E. Bower SBN 119546
**MONTEVERDE & ASSOCIATES PC**

600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (310) 446-6652
Fax: (212) 202-7880
Email: dbower@monteverdelaw.com

*Counsel for Plaintiff*

CLASS ACTION COMPLAINT

1

2   **OF COUNSEL**

3

4   **MONTEVERDE & ASSOCIATES PC**

5   Juan E. Monteverde
The Empire State Building
6   350 Fifth Avenue, Suite 4405
New York, New York 10118
7   Tel: 212-971-1341
Fax: 212-202-7880
8   Email:
jmonteverde@monteverdelaw.com
9

10

11   *Counsel for Plaintiff*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT